Eric Baum #2591618 (Pro Hac Vice To Be Filed)
Andrew Rozynski #5054465 (Pro Hac Vice To Be Filed)
**EISENBERG & BAUM, LLP**
24 Union Square East
Fourth Floor
New York, NY 10003
Telephone No. 212-353-8700
Facsimile No. 212-353-1708
E-mail: ebaum@EandBLaw.com
       arozynski@EandBLaw.com

William A. Richards #013381
Alan S. Baskin #013155
David E. Wood #021403
Leslie Ross #027207
**BASKIN RICHARDS PLC**
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone No. 602-812-7979
Facsímile No. 602-595-7800
E-mail:  brichards@baskinrichards.com
        alan@baskinrichards.com
        dwood@baskinrichards.com
        lross@baskinrichards.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anna Marie Pascoe and the Estate of William Pascoe,<br><br>                              Plaintiffs,<br><br>v.<br><br>Oro Valley Hospital, LLC, d/b/a Oro Valley Hospital, a Delaware limited liability company; John and Jane Does I-X; Black and White Corporations I-X,<br><br>                              Defendants. | Case No.<br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Anna Marie Pascoe and the Estate of William Pascoe ("Plaintiffs"), by and through their undersigned counsel, Eisenberg & Baum, LLP, and Baskin Richards PLC, as and for their respective claims against Defendant Oro Valley Hospital, LLC, doing business as Oro Valley Hospital; John and Jane Does I-X; and Black and White Corporations I-X ("Defendants"), hereby allege as follows:

## PRELIMINARY STATEMENT

1.     Plaintiffs are deaf individuals who communicate primarily in American Sign Language ("ASL"), which is their expressed, preferred, and most effective means of communication.  Defendant, Oro Valley Hospital, doing business in Tucson, Arizona, discriminated against Plaintiffs by refusing to provide effective auxiliary aids and services despite their repeated requests for effective communication. Defendant discriminated against Plaintiffs by failing to provide the auxiliary aids and services necessary for effective communication with Plaintiffs; Defendant failed to provide on-site ASL interpreters when necessary, failed to adequately train its personnel in the use of VRI systems, and required Plaintiffs to rely upon other means of communication, including passing of notes and/or lip reading, that are ineffective for communication regarding the medical treatment required by the patient Plaintiffs and the services required by their companions. Plaintiffs bring this action to compel Defendant to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendant's services. Plaintiffs seek relief necessary to redress Defendant's unlawful discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.* and its implementing regulation, 28 C.F.R. Part 36; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulation, 45 C.F.R. Part 84; Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 148116; the Arizonans with Disabilities Act ("AzDA"), A.R.S. § 41-1492, *et seq.*; and other state and federal common law rights.

2.     Lip-reading, the ability to understand the speech of another by watching the

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

speaker's lips, does not provide effective communication for most deaf and hard of hearing individuals. In fact, the upper limits of estimates for lip-reading accuracy, in an ideal one-on-one situation, have been as low as 10% to 30% of correct words. This is because only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language words or the speaker's vocabulary, because many deaf individuals, including Plaintiffs, have difficulty acquiring and communicating in English. Despite this, Defendant forced Plaintiffs to communicate in a medical setting using this unreliable and ineffective method, instead of properly accommodating their disabilities through qualified ASL interpreters.

3.      Video Remote Interpreting (VRI) is a video telecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter. VRI is inappropriate in many circumstances, including when the deaf user has other conditions that impair the deaf user's ability to utilize the device (i.e., if the deaf user has a visual impairment, is in a lot of pain, or cannot achieve the proper posture); when there are many people in a room; when staff is inadequately trained to set up or operate the device; or in situations that are especially complicated or emergent. Despite this, Defendant forced Plaintiffs to utilize a nonfunctioning VRI, or to use VRI when it was not appropriate to do so, instead of properly accommodating their disabilities.

4.      Reliance by deaf and speech impaired individuals upon family members to interpret medical communications for them is unwise, dangerous, and in violation of the regulations implementing Title III of the ADA.  See 28 C.F.R. § 36.303(c)(1)(i). Family members are generally not trained to act as interpreters, particularly in medical and hospital settings and thus, cannot accurately and precisely interpret and convey to the deaf or hard of hearing individual the complete and accurate content of medical communications. In addition, family members are generally too personally and emotionally involved with the Deaf patient to act impartially and with the emotional detachment that is necessary for qualified sign language

3

interpreters, particularly in medical settings and communications.

5.      Defendant has demonstrated and continues to repeatedly demonstrate through its interactions with Plaintiffs that Defendant's staff is not properly trained regarding how to assess the communication needs and abilities of its deaf and hard of hearing patients and companions; how to identify when live, in-person interpreter services are required for effective communication with deaf patients and their companions; and how to identify when other forms of communication, including VRI technology, the passing of written notes, gestures or lip reading offer inadequate and ineffective communication for a deaf patient or their deaf companions.

6.      Defendant has similarly repeatedly demonstrated that Defendant's staff is not properly trained regarding how to utilize VRI systems.  This lack of training results in significant delays and failures to communicate with deaf patients and their companions in critical medical care situations. As a result of these delays and failures, Plaintiffs received care and/or service that was objectively substandard and that was not equal to the care and service provided to hearing patients and hearing companions of hearing patients.

7.      Upon information and belief, despite being put on notice that problems with VRI result in ineffective communication, Defendant continues to wrongfully insist that VRI systems or other inadequate forms of communication be utilized for deaf patients and/or their deaf companions as a substitute for qualified, in-person ASL interpreters.

8.      Plaintiffs bring suit to address these discriminatory practices, obtain relief against further, future discrimination, and obtain compensation for the damages caused by the Defendant's discriminatory and unlawful policies, procedures and practices.

## THE PARTIES

9.      Defendant Oro Valley Hospital is an Arizona acute care hospital registered and doing business in the State of Arizona. Defendant's hospital is located in Tucson, Arizona.  At all times hereinafter mentioned, Oro Valley Hospital was and still is licensed and doing business in the State of Arizona, with a principal place of business in Tucson, Arizona. Defendant is responsible for actions and omissions occurring in Pima County, State of Arizona from which

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

the claims in this action arise.

10.     Defendant's facility, Oro Valley Hospital, is located at 1551 East Tangerine Road, Tucson, Arizona 85755, at which location actions and omissions giving rise to the claims in this Complaint occurred.

11.     Defendant's Oro Valley Hospital is a place of public accommodation as defined in 42 U.S.C. § 12181(7)(G) and A.R.S. § 41-1492(11)(f) and Defendant is, on information and belief, a recipient of federal financial assistance. Thus, it is subject to the requirements of the ADA, the Rehabilitation Act, Affordable Care Act and the AzDA.

12.     Defendant's      website      at      www.orovalleyhospital.com/oro-valley-hospital/patientrightsandresponsibilities.aspx lists the patient's rights and responsibilities. Included in these stated rights are:

   a. "[E]ffective communication that provides information in a manner you understand, in your preferred language with provisions of interpreting or translation services, at no cost, and in a manner that meets your needs in the event of vision, speech, hearing or cognitive impairments. Information should be provided in easy to understand terms that will allow you to formulate informed consent."

   b. "Care or services provided without discrimination based on age, race, ethnicity, religion, culture, *language, physical or mental disability*, socioeconomic status, sex, sexual orientation, and gender identity or expression." (emphasis added)

   c. "Participate in decisions about your care, including developing your treatment plan, discharge planning and having your family and personal physician promptly notified of your admission."

   d. "Receive information about the outcomes of your care, treatment and services, including unanticipated outcomes."

   e. "Receive information about benefits, risks, side effects to proposed care, treatment and services; the likelihood of achieving your goals and any

5

potential problems that might occur during recuperation from proposed care, treatment and service and any reasonable alternatives to the care, treatment and services proposed."

13.     Defendant's website, at the same location, also indicates the responsibilities of the patient during the patient's stay at Defendant's facility. Without providing effective communication, it would have been impossible for Plaintiffs to satisfy these responsibilities, including:

    a.  "Provide accurate and complete information concerning your present medical condition, past illnesses or hospitalization and any other matters concerning your health."

    b.  "Tell your caregivers if you do not completely understand your plan of care."

    c.  "Follow the caregivers' instructions."

    d.  "Follow all medical center policies and procedures while being considerate of the rights of other patients, medical center employees and medical center properties."

14.     Additionally, Defendant's website, in the same location, describes the patient's rights as they pertain to problem resolution. Patients at Defendant's facility have a right to "[e]xpress [their] concerns about patient care and safety to facility personnel and/or management without being subject to coercion, discrimination, reprisal or unreasonable interruption of care; and to be informed of the resolution process for [their] concerns."

15.     Plaintiffs Anna Marie Pascoe and the Estate of William Pascoe were married individuals who have at all material times to this Complaint resided in Pima County, Arizona. Mrs. Pascoe is profoundly deaf, communicates primarily in ASL, is substantially limited in the major life activities of hearing and speaking within the meaning of the ADA, the Rehabilitation Act, the Affordable Care Act and the AzDA, and requires a live, on-site, qualified ASL interpreter to communicate effectively in medical settings. William Pascoe is a deceased individual who at all material times hereto resided in Pima County, Arizona. Mr. Pascoe was deaf, communicated primarily in ASL, was substantial limited in the major life activities of

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

6

hearing and speaking within the meaning of the ADA, the Rehabilitation Act, the Affordable Care Act and the AzDA, and required a live, on-site, qualified ASL interpreter to communicate effectively in medical settings. William Pascoe was a patient, and Plaintiff Anna Marie Pascoe was his companion, at Defendant's Oro Valley Hospital, where they were denied appropriate auxiliary aids and services for their disabilities despite their requests to facilitate effective communication between Mr. and Mrs. Pascoe and Defendant's employees and staff during Mr. Pascoe's medical treatment in November of 2015, December of 2015, September of 2016, and October of 2016.

16.    Throughout all visits by Plaintiffs as patients or companions of patients seeking medical treatment at Defendant's facility, Defendant repeatedly denied Plaintiffs the accommodations necessary to ensure effective communication as required by law.  Defendant's repeated denial of effective communication for Plaintiffs includes providing Plaintiffs with malfunctioning VRI systems and/or repeatedly denying their requests for qualified ASL interpreters on site. When agents of Defendant Oro Valley Hospital attempted to utilize VRI equipment they often froze or could not connect, leaving communication unreliable or nonexistent. Instead of providing an on-site ASL interpreter when the VRI equipment did not work, Defendant chose to do nothing at all or to force Plaintiffs to rely on other inadequate methods of communication, resulting in ineffective communication with Plaintiffs. As to Plaintiff Anna Marie Pascoe, Oro Valley Hospital created a situation which required her to attempt to facilitate communications for Defendant with her severely ill husband, even though she is not a qualified interpreter.

17.    Upon information and belief, Plaintiffs put Defendant Oro Valley Hospital on notice that the VRI systems at Oro Valley Hospital did not provide effective communication in the instances it was used with them. Despite this notice, Defendant continued to wrongfully mandate the use of VRI when it is ineffective instead of securing on-site, qualified ASL interpreters.

18.    Defendants John and Jane Does I-X are, on information and belief, persons whose actions or omissions give rise to or have caused harms claimed in this Complaint, or whose

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

actions or omissions form a part of a combination or conspiracy that has resulted in the harms claimed in this Complaint, and who are also therefore liable to Plaintiffs, but whose identities are not yet known to the Plaintiffs. The Plaintiffs hereby reserve the right to substitute for each such Defendant the true names of each such person whose true name is identified through discovery in this matter or otherwise.

19.     Defendants Black and White Corporations I-X are, on information and belief, corporate or business entities or groups whose actions or omissions give rise to or have caused harms that are the subject of the claims in this action, or whose actions or omissions form a part of a combination or conspiracy that has resulted in the harms claimed in this Complaint, and who are also therefore liable to Plaintiffs, but whose identities are not yet known to the Plaintiffs. These entities include parent or affiliate organizations of the named Defendant Oro Valley Hospital, LLC who are responsible for the actions, omissions, services, treatment, policies or practices that have caused a violation of the Plaintiffs' rights under federal or state law as set forth below.  The Plaintiffs hereby reserve the right to substitute for each such Defendant the true names of each such person whose true name is identified through discovery in this matter or otherwise.

## JURISDICTION & VENUE

20.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiffs' claims arising under federal law. In addition, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant has sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced, the parties all reside within this District, and the acts and omissions giving rise to the causes of action asserted herein occurred in this District.

## STATEMENT OF FACTS

22.     Plaintiff Anna Marie Pascoe is deaf and requires a qualified sign language interpreter to communicate effectively in medical settings.

23.     Patient William Pascoe was also deaf and required a qualified sign language

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

interpreter to communicate effectively in medical settings.

24. Plaintiff Anna Marie Pascoe was married to William Pascoe until his passing on October 3, 2016.

25. On November 22, 2015, Mr. and Mrs. Pascoe went to the emergency room at Oro Valley Hospital because Mr. Pascoe was experiencing shortness of breath, nausea, and fever.

26. Mr. Pascoe was taken to the emergency room by ambulance.

27. Although Defendant's staff, agents, and medical personnel knew or reasonably should have known that Mr. and Mrs. Pascoe were deaf and required the use of qualified ASL interpretation services through Mr. and Mrs. Pascoe's interactions with Defendant and/or, on information and belief, Mr. Pascoe's medical records, Defendant nonetheless failed to provide a qualified ASL interpreter for Mr. and Mrs. Pascoe and instead attempted communications through handwritten notes and lip reading.

28. After being admitted to the emergency room, Mr. Pascoe was given a physical exam by Defendant's staff.

29. During the physical exam, Defendant's staff used Mrs. Pascoe to facilitate communication between Mr. Pascoe and Defendant's staff by having her perform sign language with Mr. Pascoe.

30. Mr. Pascoe was admitted to the hospital and underwent several exams while he was there, including and EKG exam, a chest X-ray, and an ultrasound.

31. Mr. Pascoe was discharged on November 24, 2015.

32. On December 9, 2015, Mr. and Mrs. Pascoe went to Oro Valley Hospital because Mr. Pascoe had an appointment to have an echocardiogram performed.

33. Although Defendant's staff, agents, and medical personnel knew or reasonably should have known that Mr. and Mrs. Pascoe were Deaf and required the use of qualified on-site ASL interpretation services through Mr. and Mrs. Pascoe's interactions with Defendant and/or, on information and belief, Mr. Pascoe's medical records, Defendant nonetheless failed to provide a qualified on-site ASL interpreter for Mr. and Mrs. Pascoe.

34. On September 8, 2016, Mr. and Mrs. Pascoe went to the emergency room at Oro

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

Valley Hospital because Mr. Pascoe was experiencing difficulty breathing.

35.    Although Defendant's staff, agents, and medical personnel knew or reasonably should have known that Mr. and Mrs. Pascoe were deaf and required the use of qualified on-site ASL interpretation services through Mr. and Mrs. Pascoe's interactions with Defendant and/or, on information and belief, Mr. Pascoe's medical records, Defendant nonetheless failed to provide a qualified on-site ASL interpreter for Mr. and Mrs. Pascoe.

36.    During his stay at the emergency room, Mr. Pascoe underwent several exams, including an EKG exam and a chest X-ray.

37.    On October 2, 2016, Mr. and Mrs. Pascoe went to the emergency room at Oro Valley Hospital because Mr. Pascoe was experiencing shortness of breath and pain.

38.    Mr. Pascoe was taken to the emergency room by ambulance.

39.    When Mr. and Mrs. Pascoe arrived at the emergency room, Mrs. Pascoe made a request to Defendant's staff for a live, on-site ASL interpreter.

40.    Defendant's staff instead brought a nurse who they claimed knew some sign language.

41.    However, on information and belief, the nurse was not a qualified ASL interpreter and did not provide adequate or effective communication between Mr. and Mrs. Pascoe and Defendant's staff.

42.    After asking Mr. and Mrs. Pascoe a small number of questions, Defendant's staff took Mr. Pascoe to a hospital room.

43.    Defendant's staff did not provide Mr. or Mrs. Pascoe with any explanation about what they were doing at this time.

44.    After being admitted to the hospital, Mr. Pascoe underwent an EKG exam, a chest X-ray, and an ultrasound.

45.    After staying with Mr. Pascoe during much of the evening, Mrs. Pascoe left the hospital and returned home.

46.    The next morning, Mrs. Pascoe returned to the hospital.

47.    When she arrived, Mr. Pascoe was in an unconscious state, and Mrs. Pascoe again

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

requested a live, on-site ASL interpreter.

48.     Defendant's staff denied her request and told Mrs. Pascoe that they did not have enough time to bring in an interpreter.

49.     Mrs. Pascoe then informed Defendant's staff that interpreter agencies can provide interpreters last minute.

50.     Defendant's staff also failed to bring out a VRI machine at this time, and instead attempted communication with Mrs. Pascoe through lip reading and handwritten notes.

51.     On information and belief, Mr. Pascoe went into a coma around 11:00 P.M. on October 2, 2017, while Mrs. Pascoe was not present.

52.     Defendant's staff failed to inform Mrs. Pascoe that Mr. Pascoe had gone into a coma. Rather, they only relayed information that kept Mrs. Pascoe from initially understanding the seriousness of her husband's medical condition.

53.     Defendant's staff finally brought out a VRI machine later that afternoon, and told Mrs. Pascoe that Mr. Pascoe should have been taken to a different room to help him with his breathing.

54.     The VRI machine experienced multiple problems, including freezing, a blurry screen, and problems with the interpreter being able to hear Defendant's staff.

55.     Defendant's staff also attempted to communicate with Mrs. Pascoe through lip reading.

56.     However, Defendant's staff often had their backs turned to Mrs. Pascoe, making lip reading impossible.

57.     On information and belief, Defendant's staff believed that Mr. Pascoe was about to pass away.

58.     However, Defendant's staff did not explain to Mrs. Pascoe that Mr. Pascoe was about to pass away, and instead attempted to talk with Mrs. Pascoe only about Mr. Pascoe's treatment.

59.     Mrs. Pascoe was unable to understand or fully ask questions to obtain the Defendant's staff's full opinion on Mr. Pasoe's immediate condition.

60.     Mr. Pascoe passed away that evening at approximately 6:25 P.M.

61.     Even though Mrs. Pascoe was in the room at the time, due to the Defendant's failure to provide the aids and services she needed for effective communication, she did not fully understand that Mr. Pascoe was about to pass away.

62.     Instead, Mrs. Pascoe spent Mr. Pascoe's final moments stressed, confused, and unable to learn about Mr. Pascoe's condition.

63.     Based on Defendant's previous and repeated denials of effective communication for Plaintiffs, it is reasonably foreseeable that Defendant will deny other deaf and hard of hearing persons effective communication in the future.

64.     Because Mr. Pascoe was severely and terminally ill during his October 2016 visit to Defendant's facility, without a qualified ASL interpreter, he had no way to communicate with Defendant's staff, no way of understanding his condition, and no way of understanding his prognosis or the treatments he was given. Additionally, because of Mr. Pascoe's condition, it was essential that Mrs. Pascoe be able to assist in Mr. Pascoe's care. However, Mrs. Pascoe was not able to assist in Mr. Pascoe's care because no qualified ASL interpreter or suitable auxiliary service was provided.

65.     Due to Defendant's refusal to provide a qualified ASL interpreter during Mr. Pascoe's stays at Oro Valley Hospital, Plaintiffs Anna Marie Pascoe and the Estate of William Pascoe were denied adequate and effective communication. They were also denied treatment and services equal to that Defendant provided to hearing patients and companions.

66.     Throughout Mr. Pascoe's medical treatment, he had insufficient understanding of his medical conditions, the examinations he underwent, or of instructions for his follow-up care, all due to Defendant's failure and/or refusal to provide effective auxiliary aids and services to accommodate his disability. He was denied equal treatment to the treatment and services Defendant provided to hearing patients.

67.     Defendant's denial of effective communication during Mr. Pascoe's medical treatment caused Plaintiffs significant pain, suffering, and emotional distress. Mr. and Mrs. Pascoe were frustrated, frightened, humiliated, and depressed because they could not

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

effectively understand the Defendant's medical providers, could not effectively communicate questions or obtain answers about Mr. Pascoe's health, diagnosis, treatments, restrictions related to and prognosis for recovery as well as necessary follow-up treatments, resulting in Mr. Pascoe's overall inability to meaningfully participate in Mr. Pascoe's medical care.

68.   As a result of the actions and/or inactions of Defendant and its physicians and/or staff, Plaintiffs Anna Marie Pascoe and the Estate of William Pascoe were denied the same opportunities that are readily and routinely provided to hearing persons and their spouses to make decisions regarding treatments and/or to give consent to such treatments.

69.   Defendant's failure to provide qualified sign language interpreters made William Pascoe's medical care more difficult because it prevented effective communication between Plaintiffs and Defendant's staff.

70.   As a result of Defendant's failure to ensure effective communication with Plaintiffs, Plaintiffs received care and services that were objectively substandard and that are inferior to care and services provided to patients and companions who can hear.

71.   Defendant intentionally discriminated against Plaintiffs and acted with deliberate indifference to their communication needs, causing them to endure humiliation, fear, anxiety, and emotional distress.

72.   Defendant's denial of effective communication during the medical treatment of Mr. Pascoe caused Mr. and Mrs. Pascoe significant pain, suffering, and emotional distress. Due to Defendant's refusal to provide effective communication, Plaintiffs and/or their family members, and companions did not meaningfully understand critical information about diagnoses, prognoses, and medication and/or treatment options, and at times Mrs. Pascoe was forced to undergo procedures without the Plaintiffs adequately understanding the risks and benefits thereof.

73.   As alleged above, Plaintiffs put Defendant's staff on notice that communication was not effective by alerting them of their need for qualified, live ASL interpreters.

74.   Yet, despite such notice, Defendant failed and/or refused to provide qualified, on-site ASL interpreters.

75.   Rather, Defendant knowingly limited Plaintiffs to the communication the Plaintiffs could achieve through vague gestures, inadequate notes, and the few words Plaintiffs could understand through reading lips.

76.   Upon information and belief, Defendant is aware of its obligations under federal and state law to provide adequate and effective communication for the deaf and hard of hearing and speech impaired individuals that visit its medical facility as either patients or companions of patients.

77.   Also upon information and belief, Defendant and its agents, including those medical personnel attending Plaintiffs, were aware that failure to provide adequate and effective communication to the Plaintiffs could result in serious and harmful anxiety, confusion, lack of understanding, frustration, depression and other serious emotional harms; could prevent the Plaintiffs from enjoying the right and ability to understand and participate in Mr. Pascoe's medical care; and could expose the Plaintiffs to serious risks of physical harm and injury due to their inability to adequately understand the medical conditions, the treatments they were receiving or that were being recommended to them, and the best and most appropriate courses of action by the Plaintiffs to ensure long term recovery and health.

78.   Also upon information and belief, Defendant and its agents, including those medical personnel attending Plaintiffs, were aware that the Defendant's failure and refusal to provide adequate and effective communication for Plaintiffs could result in poor or materially diminished patient care and outcomes contributing to long-term physical harms and requiring additional medical care.

79.   Upon information and belief, Defendant refuses and/or fails to hire qualified, on-site sign language interpreters as a matter of policy, practice or procedure at its hospital and other facilities, and insists upon communication through such inadequate means of communication as handwritten notes, gestures, and/or lip reading in cases that may not be conducive for such use.

80.   Upon information and belief, the refusal to offer on-site sign language interpreter services to Plaintiffs is a result of a policy or practice of Defendant to discourage the use of on-

site interpreters without regard to whether other methods of communication will provide effective communication.

81. Furthermore, despite its knowledge and understanding of its legal obligations to provide adequate and effective communication to the Plaintiffs, and its knowledge and understanding that the failure to provide adequate and effective communication to Plaintiffs could and would result in denial of the Plaintiffs' rights under law and in serious and material harm and injury to the Plaintiffs, Defendant knowingly, intentionally and maliciously failed and/or refused to provide adequate and effective communication to Plaintiffs in an intentional and/or deliberately indifferent violation of Plaintiffs' rights.

82. It is reasonably foreseeable that Plaintiff Anna Marie Pascoe will continue to visit Defendant's facility, either by choice or necessity, due to the proximity of Defendant's facility to her home. Based on Defendant's previous and repeated denials of effective communication for Plaintiffs, it is reasonably foreseeable that a denial of effective communication for Plaintiff Anna Marie Pascoe as a result of Defendant's actions, omissions, policies or practices will occur again. Accordingly, Plaintiff Anna Marie Pascoe is aware of discriminatory barriers to access at Defendant's facilities and is thereby deterred from accessing Defendant's healthcare services because of the discrimination she has faced and expects to face in the future, even though she would do so if the discriminatory acts ceased. Therefore, Defendant's actions warrant the imposition of injunctive relief to ensure the cessation of Defendant's wrongful conduct.

83. Defendant's actions and omissions resulting in harms to the Plaintiffs were willful, malicious, intentional, recklessly indifferent and undertaken with an evil mind and motive and with disregard for and deliberate indifference to the legal rights of Plaintiffs under federal and state law and the substantial risk of serious and material harms to the Plaintiffs. Therefore, to the extent allowed by any applicable law, Defendant's actions would warrant the imposition of punitive or exemplary damages to punish the Defendant for its wrongful conduct and to deter other similarly situated persons or entities from similar future conduct.

## CLAIM 1: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

84.     Plaintiffs repeat and reallege all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

85.     At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181, *et seq*. has been in full force and effect and has applied to Defendant's conduct.

86.     At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendant's conduct.

87.     At all times relevant to this action, Plaintiffs have been substantially limited in the major life activities of hearing and speaking. Accordingly, they are considered individuals with a disability as defined under the ADA, 42 U.S.C. § 12102(2).

88.     Defendant owns, leases, and/or operates a place of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F).

89.     Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

90.     Title III of the ADA defines discrimination to include denying participation or offering unequal or separate benefits to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A); *see also* 28 C.F.R. § 36.202.

91.     Title III of the ADA further defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . . ." 42 U.S.C. § 12182(b)(2)(A)(iii).

92.     Pursuant to Title III of the ADA and its implementing regulations it "shall be

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

93.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation shall furnish appropriate auxiliary aids and services to ensure effective communication with individual with disabilities. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(b)(1).

94.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation, in choosing the type of auxiliary aid or service to ensure effective communication, must consider the "method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. § 36.303(c)(1)(ii).

95.     Pursuant to Title III of the ADA and its implementing regulations, in order to be effective, the type of auxiliary aid or service provided by the public accommodations "must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

96.     Pursuant to Title III of the ADA and its implementing regulations, when a public accommodation provides VRI service, it must ensure that the service includes all the following criteria: "(1) [r]eal-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; (2) [a] sharply delineated image that is large enough to display the interpreter's face, arms, hands, and fingers, and the participating individual's face, arms, hands, and fingers, regardless of his or her body position; (3) [a] clear, audible transmission of voices; and (4) [a]dequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI." 28 C.F.R. § 36.303(f).

97.     Based on all of the foregoing allegations confirming the Defendant's treatment

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

and interactions with the Plaintiffs, Defendant discriminated against the individual Plaintiffs by: (1) denying Plaintiffs an equal opportunity to participate in and benefit from Defendant's goods, services, facilities, privileges, advantages, and/or accommodations, in violation of 42 U.S.C. § 12182(b)(1)(A); (2) failing to ensure adequate and effective communication for Plaintiffs through the provision of on-site qualified sign language interpreters, in violation of 42 U.S.C. § 12182(b)(2)(A); (3) failing to ensure adequate and effective communication for Plaintiffs by relying on inadequate means of communication other than qualified sign language interpreters; (4) excluding or otherwise denying equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to Plaintiffs because of the known disability of an individual with whom the individual is known to have a relationship or association, in violation of 42 U.S.C. § 12182(b)(1)(E); and (5) failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 42 U.S.C. § 12182(b)(2)(A).

98.     As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiff Anna Marie Pascoe and/or additional deaf persons. Plaintiff Anna Marie Pascoe is therefore entitled to injunctive relief, as well as an award of attorney's fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## CLAIM 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

99.     Plaintiffs repeat and reallege all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

100.    At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 has been in full force and effect and has applied to the Defendant's conduct.

101.    At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to the Defendant's conduct.

102.    At all times relevant to this action, Plaintiffs have had substantial impairment to

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

the major life activities of hearing and speaking within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9), and its implementing regulations at 45 C.F.R. § 84.3(j). Accordingly, they are individuals with a disability as defined under the Rehabilitation Act.

103.    At all times relevant to this action, Plaintiffs were qualified to receive services through Defendant's facilities.

104.    Upon information and belief, at all times relevant to this action Defendant has received federal financial assistance, including Medicaid reimbursements, and has been principally engaged in the business of providing health care. Therefore, Defendant and its associated medical facilities qualify as a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

105.    Pursuant to Section 504, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794.

106.    As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities, Defendant has discriminated against and continues to discriminate against the individual Plaintiffs by denying them meaningful access to the services, programs, and benefits the Defendant offers to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication with Plaintiffs, in violation of Section 504 of the Rehabilitation Act. 29 U.S.C. § 794.

107.    As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities, Defendant further discriminated against the individual Plaintiffs by: 1) failing to ensure adequate and effective communication with Plaintiffs through the specific provision of qualified, in-person sign language interpreters; 2) failing to ensure adequate and effective communication with Plaintiffs through VRI systems that functioned properly; and 3) requiring Plaintiffs to rely upon ineffective and inadequate means of communication including passing

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

of handwritten notes, gestures and/or lip reading.

108.   Defendant's violation of its obligations and the Plaintiffs' rights under the Rehabilitation Act and its implementing regulations has caused substantial damages, suffering, loss and harm to the Plaintiffs, including, without limitation, serious and lasting emotional harm, anxiety, frustration, fear and other serious emotional conditions or symptoms.

109.   As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur again with Plaintiff Anna Marie Pascoe, and other deaf patients, their companions and family members.

110.   Plaintiffs are therefore entitled to seek and recover all appropriate compensatory damages for the injuries and losses they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

111.   Plaintiffs are further entitled to an award of attorney's fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## CLAIM 3: VIOLATIONS OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

112.   Plaintiffs repeat and reallege all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

113.   At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 U.S.C. § 18116 was in full force and effect and applied to the Defendant's conduct.

114.   At all times relevant to this action, Section 1557, 42 U.S.C. § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

115.   At all times relevant to this action, Plaintiffs had substantial limitations to the major life activity of hearing and speaking, and were individuals with disabilities within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 U.S.C. § 18116.

116.   At all times relevant to this action, Plaintiffs' primary language for communication was American Sign Language and not English; and Plaintiffs had limited ability to read, write, speak, or understand English, and were individuals with limited English

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

117.   At all times relevant to this action, Defendant received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

118.   Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 U.S.C. § 18116.

119.   Defendants have discriminated and continue to discriminate against Plaintiffs by denying them meaningful access to the services, programs, and benefits the Defendant offers to other individuals and by refusing to provide auxiliary aids and services necessary to ensure effective communication with Plaintiffs in violation of Section 1557, 42 U.S.C. § 18116.

120.   Defendants discriminated against the individual Plaintiffs by failing to ensure effective communication with Plaintiffs through the providing of qualified sign language interpreters on-site and/or through properly functioning VRI machines.

121.   On information and belief, the refusal to offer on-site ASL interpreter services is as a result of a policy or practice of Defendants to prohibit or impede the use of on-site qualified sign language interpreters without regard to whether VRI services will provide effective communication.

122.   As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur again with Plaintiff Anna Marie Pascoe, and other Deaf patients and family members.

123.   Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

124.   Plaintiffs   are   further   entitled   to   an   award   of   attorney's   fees,   costs,   and

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## CLAIM 4: VIOLATIONS OF THE ARIZONANS WITH DISABILITIES ACT

125.    Plaintiffs repeat and reallege all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

126.    At all times relevant to this action, the Arizonans with Disabilities Act (AzDA), A.R.S. § 41-1492, *et seq*., has been in full force and effect and has applied to Defendant's conduct.

127.    At all times relevant to this action, Plaintiffs have had substantial impairment to a major life activity of hearing and speaking and are qualified individuals with a disability within the meaning of the AzDA, A.R.S. §§ 41-1492(6) and (8)(a).

128.    At all times relevant to this action, Defendant's facilities at which Plaintiffs were served or treated were and are places of public accommodation within the meaning of AzDA, A.R.S. § 41-1492(11).

129.    The AzDA, A.R.S. § 41-1492.02(A), states that "[n]o individual may be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases, leases to others or operates a place of public accommodation."

130.    Discrimination under the AzDA includes any "failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of reasonable modifications in policies, practices or procedures or auxiliary aids and services." A.R.S. § 41-1492.02(G)(3).

131.    Discrimination under the AzDA also includes exclusion or denial or "equal goods, services, facilities, privileged, advantages, accommodations or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." A.R.S. §41-1492.02(F).

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

132.    As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities, Defendant has discriminated against and continues to discriminate against the individual Plaintiffs by denying them meaningful access to the services, programs, and benefits the Defendant offers to other individuals, by failing and refusing to modify the Defendant's policies, procedures and practices regarding reliance on VRI systems or other methods of communication other than live, ASL on-site interpreters, and by its refusal to provide live, on-site sign language interpreters, and by its refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of the AzDA and the Plaintiffs' rights thereunder.

133.    As set forth in the foregoing allegations about the patient Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities, Defendant specifically discriminated against the individual Plaintiffs by: 1) failing to ensure adequate and effective communication with Plaintiffs through the specific provision of qualified, in-person sign language interpreters; 2) failing to ensure adequate and effective communication with the Plaintiffs through VRI systems that functioned properly; and 3) requiring the Deaf Plaintiffs to rely upon ineffective and inadequate means of communication including passing of handwritten notes, gestures and/or lip reading.

134.    Discrimination under the AzDA also includes, "[a] failure to make reasonable modifications in policies, practices or procedures, if these modifications are necessary to afford these goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making these modifications would fundamentally alter the nature of these goods, services, facilities, privileges, advantages or accommodations." A.R.S. § 41-1492.02(G)(2)

135.    Upon information and belief, Defendant has a policy of using VRI except in certain discrete situations.

136.    As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities,

Plaintiffs requested reasonable accommodations to Defendant's patient and companion communication policy and/or Defendant had reason to know of the Plaintiffs' disabilities and inability to request an accommodation, and that Plaintiffs needed a reasonable accommodation, but nonetheless denied Plaintiffs a reasonable accommodation, which resulted in Plaintiffs being harmed.

137.    Defendant's violation of its obligations and the Plaintiffs' rights under the AzDA has caused substantial damages, suffering, loss and harm to the Plaintiffs, including, without limitation, serious and lasting emotional harm, anxiety, frustration, fear and other serious emotional conditions or symptoms.

138.    As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiff Anna Marie Pascoe, and/or additional deaf persons.

139.    Plaintiffs are therefore entitled to seek and recover all appropriate compensatory damages and injunctive relief for the injuries and losses they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, including as allowed pursuant to A.R.S. § 41-1492.09.

140.    Plaintiffs are further entitled to an award of attorney's fees, costs, and disbursements pursuant to A.R.S. § 41-1492.09 and/or as otherwise provided at law

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully pray that this Court grant the following relief against the Defendants:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' practices, policies and procedures have subjected Plaintiffs to discrimination in violation of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, Section 1557 of the Affordable Care Act, and the Arizonans with Disabilities Act;

B. Enjoin Defendants from implementing or enforcing any policy, procedure, or practice that denies individuals who are deaf or hard of hearing, such as Plaintiffs, meaningful access to and full and equal enjoyment in Defendants' services or programs;

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

C.  Order Defendant:

      i.    to develop and comply with written policies, procedures, and practices to ensure that Defendants do not discriminate in the future against Plaintiff Anna Marie Pascoe and other similarly situated individuals who are deaf or hard of hearing by failing to provide effective communication;

      ii.    to develop, promulgate, implement and comply with a policy requiring that when a patient or other deaf individual appearing as a companion or family member for a patient requests an on-site interpreter for effective communication, a fully qualified sign language interpreter will be provided as soon as practicable in all services offered by Defendants;

      iii.    to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their rights to effective communication under all applicable federal and state law. This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

      iv.    to develop, implement, promulgate, and comply with a policy to ensure, in the event any facility operated by Defendants utilize a Video Remote Interpreting System ("VRI"), that such system has all functions and characteristics necessary to ensure it provides for effective communication given all the conditions and circumstances present, including without limitation that such system utilizes;  1) a  high-speed Internet connection; 2) a video screen and camera with appropriate size, resolution, position, capture angle, focus, and proximity to the deaf individual; and 3) appropriate audio quality. When necessary for effective communication the equipment must be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

maintain confidentiality;

    v.    To provide at all times and at all Defendants' medical facilities utilizing VRI systems adequately trained and experienced employees or contractors sufficient to ensure that any VRI systems or related communications equipment or resources are maintained at all times in proper working condition and can be promptly fixed in time to avoid any prejudice or unreasonable delay in patient care or companion communication;

    vi.    to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard-of-hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

    vii.    to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

    viii.    to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, Section 504 of the Rehabilitation Act, 1557 of the Affordable Care Act and the AzDA;

    ix.    to train all its employees, staff, and other agents on a regular basis about how to properly assess when VRI or other alternative means of communication do not provide effective communication for a deaf patient or other deaf and hard of hearing companions or visitors to the Defendants' facilities;

    x.    to train its employees, staff, and other agents on a regular basis about Defendants' policies regarding when and how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when requested by deaf or hard of hearing patients or companions;

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

D.  Award to Plaintiffs:

    i.   all appropriate actual and compensatory damages pursuant to Section 504 of the Rehabilitation Act, Section 1557 of the Affordable Care Act, and the Arizonans with Disabilities Act sufficient to fully remedy all damages, suffering, injury and losses caused to Plaintiffs by Defendants;

    ii.   to the extent allowed by any applicable law, punitive damages in an amount sufficient to punish the Defendants and to deter similarly situated persons or entities from similar future conduct;

    iii.   reasonable costs and attorneys' fees pursuant to the ADA, Section 504 of the Rehabilitation Act, Section 1557 of the Affordable Care Act and the AzDA;

    iv.   interest on all amounts at the highest rates and from the earliest dates allowed by law;

    v.   any and all other relief that this Court finds just, necessary and appropriate.

## **JURY DEMAND**

Plaintiffs demand trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

/ / /
/ / /

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

RESPECTFULLY SUBMITTED this 20th day of November, 2017.

BASKIN RICHARDS PLC

/s/ William A. Richards
William A. Richards
Alan S. Baskin
David E. Wood
Leslie Ross
2901 N. Central Avenue, Suite 1150
Phoenix, AZ  85012

AND

EISENBERG & BAUM, L.L.P.
Eric Baum, Esq.
Andrew Rozynski, Esq.
24 Union Square East
Fourth Floor
New York, NY 10003

*Attorneys for Plaintiffs*